UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF New York _____

| | |
|---|---|
| In re: | Case No. 12-43503-CEC |
| Suffolk Regional Off-Track Betting Corporation, | Chapter 9 |
| Debtor. | |

_____

## DECISION

### APPEARANCES:

Christopher F. Graham, Esq.
Kelly Robreno Koster, Esq.
Eckert Seamans Cherin & Mellot, LLC
10 Bank Street, Suite 700
New York, New York 10005
*Counsel for Adjusted Debtor
Suffolk Regional Off-Track Betting
Corporation*

David R. Hock, Esq.
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, New York 10036
*Counsel for City Employees Union Local
237, IBT*

Andrew Eckstein, Esq.
Blank Rome LLP
405 Lexington Avenue
New York, New York 10174
*Counsel for Post Effective Date
Creditor's Committee*

Wayne Gladstone, Esq.
Lee Woodard, Esq.
Harris Beach PLLC
100 Wall Street
White Plains, New York, 10606
*Counsel for County of Suffolk*

Hanh V. Huynh, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
*Counsel for New York State Gaming
Commission and New York State
Office of General Services*

Robert N. H. Christmas, Esq.
Nixon Peabody LLP
437 Madison Avenue, 18th Floor
New York, New York 10022
*Counsel for the Town of Brookhaven*

Dennis M. Brown, Esq.
100 Vets Highway
Hauppauge, New York 11788
*County Attorney for County of Suffolk*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the applications of Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB" or the "Debtor") for an Order to Show Cause why the Town of Brookhaven and the State of New York Should Not Accept Building Permit and Related Applications From the Adjusted Debtor, and an Order to Show Cause why Suffolk County Should Not Accept Building Permit and Related Applications From the Adjusted Debtor. Suffolk OTB seeks an order requiring the Town of Brookhaven, the State of New York, and/or the County of Suffolk (the "County") to consider its application for a building permit and related applications regarding the siting and construction of its proposed video lottery terminal facility (the "VLT Facility") in the Town of Brookhaven ("Brookhaven"), and, if appropriate, to issue the required permits. The VLT Facility is to be built in order to implement Suffolk OTB's confirmed plan in this case.

Suffolk OTB's motion is granted for the reasons and to the extent set forth herein.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to the terms of Suffolk OTB's confirmed plan, 11 U.S.C. §§ 945(a) and 1142(b), 28 U.S.C. § 157, 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). Suffolk OTB is a public benefit corporation organized under Articles V and VI of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "Racing

Law"). (2d Am. Disclosure Statement at 13, ECF No. 298.)[1] Suffolk OTB was formed on October 7, 1974 pursuant to a vote of the County legislature on April 22, 1970 that made the County a "participating county" in Suffolk OTB under Racing Law §§ 501 & 502. (2d Am. Disclosure Statement at 14, ECF No. 298; N.Y. Rac. Parimut. Wag. & Breed. Law §§ 501 and 502.) The County is responsible for the management of Suffolk OTB, and appoints the three board members of Suffolk OTB. (2d Am. Disclosure Statement at 14, ECF No. 298.) The County is also one of the primary beneficiaries of Suffolk OTB's activities. (2d Am. Disclosure Statement at 13, ECF No. 298.) The County has appeared in the case and is a creditor of Suffolk OTB. (County's Resp. at 2-3, ECF No. 232.)

The VLT Facility is critical to Suffolk OTB's efforts to adjust its debts and emerge from bankruptcy. (Order to Show Cause ¶ 13, ECF No. 368; 2d Am. Plan at 1-2, ECF No. 318.) On October 31, 2014, the Court entered an order confirming the Second Amended Chapter 9 Plan (the "Plan"). (Order, ECF No. 326.) The Plan provides for construction of the VLT Facility, and the funding and feasibility of the Plan depends on its revenues. (Order at 9, ECF No. 326; 2d Am. Plan at 1-2, ECF No. 318.) The Plan also provides that the Court shall retain exclusive jurisdiction to the fullest extent permitted by law to "take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan." (2d Am. Plan at 37-39, ECF No. 318.) Suffolk OTB has already acquired the real estate to build the VLT Facility, obtained the necessary financing, commenced the required environmental review, and completed the design documents. (Order to Show Cause ¶¶ 17-19, ECF No. 368; Letter at 4, Case No. 12-43503, ECF No. 366.) Before Suffolk OTB can proceed any further with construction of the VLT Facility, it must complete the administrative process required for the relevant authority to issue a building

---

[1] Citations to "ECF No." are to papers filed on the docket in this case, No. 12-43503, identified by document number, unless otherwise indicated.

permit, and before it can operate the VLT Facility, it must have a certificate of occupancy. (Order to Show Cause ¶¶ 19, 21, ECF No. 368; Letter at 3-4, ECF No. 365.) It must also complete the review required under the State Environmental Quality Review Act ("SEQR"). (County's Mem. of Law in Opp'n at 6-7, ECF No. 451; see N.Y. Envtl. Conserv. Law § 8-0101 et seq. and 6 N.YC.R.R. 617.1 et seq.)

Suffolk OTB was granted authority to construct the VLT Facility under New York Tax Law 1617-a(a)(4). That law provides that Suffolk OTB may establish a facility containing a maximum of 1,000 video lottery terminals. N.Y. Tax Law § 1617-a(a)(4). Such facility must be located within a facility authorized pursuant to Racing Law §§ 1008 or 1009. Id. Suffolk OTB has proposed to build the VLT Facility as part of a simulcast facility authorized under Racing Law §§ 1008 and 1003. (Order to Show Cause ¶ 50, ECF No. 238.)

Suffolk OTB first approached Brookhaven, where the VLT Facility will be located, to seek site plan approval and a building permit in June 2014. (Letter at 5, ECF No. 365; Aff. of Anthony Pancella ¶ 4, ECF No. 454.) In October 2014, Suffolk OTB purchased the property where it proposes to build the VLT Facility. (Aff. of Anthony Pancella ¶ 4, ECF No. 454.) Suffolk OTB filed its site plan and land use application with Brookhaven, along with filing fees of $30,903.83, on November 24, 2014. (Aff. of Anthony Pancella ¶ 7, ECF No. 454.) Brookhaven, however, ultimately refused to accept the applications, taking the position that it "did not have discretionary power to approve or disapprove the project, and, pursuant to state statute, had no power to grant site plan approval." (Order to Show Cause ¶ 33, ECF No. 368.)

Suffolk OTB then approached the New York Gaming Commission (the "Gaming Commission") and the New York Office of General Services ("OGS" collectively, the "State") to request the issuance of a building permit. (Order to Show Cause ¶ 36, ECF No. 368.) Both

agencies, however, refused to entertain any application for a building permit, stating that they lacked authority to do so. (Order to Show Cause ¶ 43, ECF No. 368.)

Suffolk OTB also requested that the State take lead agency status for SEQR review. (Aff. of Anthony Pancella ¶ 9, ECF No. 454.) The State ultimately declined, however, stating that it could not be the lead agency for SEQR review because Suffolk OTB is not a state agency. (Letter at 6-7, ECF No. 366.) Suffolk OTB then declared its intention to serve as the lead agency for the SEQR review process and has retained a consultant to complete the process. (Aff. of Anthony Pancella ¶¶ 10-11, ECF No. 454.)

On August 18, 2015, in an attempt to break the impasse between Brookhaven and the State, Suffolk OTB made an application for an order to show cause (the "First OSC") seeking an order directing Brookhaven and the State to accept the application for a building permit and related applications from Suffolk OTB and to issue a decision with respect to those applications within 45 days. (Order to Show Cause, ECF No. 368.)

In its response to the First OSC, the State pointed out that section 1201.2(c) of Title 19 of the New York Compilation of Codes, Rules and Regulations ("Rule" or "Rules") imposes responsibility on the County, as the participant in Suffolk OTB, for issuance of a building permit and certificate of occupancy for the VLT Facility. (Mem. of Law in Opp'n at 11, ECF No. 383.) Rule 1201.2(c) provides in full:

> A county or a city which participates in a regional off-track betting corporation established pursuant to article V of the Racing, Pari-Mutuel Wagering and Breeding Law shall be accountable for administration and enforcement of the Uniform Code with respect to buildings, premises and equipment in the custody of, or activities related thereto undertaken by, such corporation, whenever such buildings, premises, equipment or activities are located or occur within the boundaries of the respective county or city.[2]

---

[2] The New York State Uniform Fire Prevention and Building Code Act (the "Uniform Code") sets minimum standards for the construction of buildings throughout the state. N.Y. Exec. Law §§ 370 et seq. The default rules

19 N.Y.C.R.R. § 1201.2(c).) Following the hearing on the First OSC on September 15, 2015, Suffolk OTB made an application for a second order to show cause on September 18, 2015 (the "Second OSC"), seeking an order directing the County to accept Suffolk OTB's application for a building permit and related applications for the VLT Facility. (Order to Show Cause, ECF No. 421.) The County filed an objection to the Second OSC on October 13, 2015. (Obj., ECF No. 428.) A hearing was held on the Second OSC on October 14, 2015. Subsequent hearings were held on October 21, 2015 and October 28, 2105. The Court received supplemental briefing from Suffolk OTB, Brookhaven, and the County on November 18, 2015.[3]

In its most recent submission, the County has conceded that it is accountable for administration and enforcement of the Uniform Code with respect to the VLT facility. (County's Mem. of Law in Opp'n at 5-6, ECF No. 451.) The County continues to maintain, however, that Brookhaven is responsible for site development plan review and approval.

For the reasons set forth in this decision, the Court grants Suffolk OTB's motion with respect to the County, finding that the County is accountable for administration and enforcement of the Uniform Code with respect to the VLT Facility. The Court also grants Suffolk OTB's motion with respect to Brookhaven, finding that Brookhaven is required to accept and review Suffolk OTB's site development plan for the VLT Facility. Further, the Court finds that Suffolk OTB must complete its SEQR review prior to final action on both the site development plan and the building permit.

---

provide that "every local government shall administer and enforce" the Uniform Code. Id. § 381(2). The Uniform Code does, however, provide for counties or the State to administer and enforce the code in certain situations. Id.

[3] Suffolk OTB has separately commenced an adversary proceeding against Brookhaven, the Gaming Commission, the OGS, and Suffolk County, seeking the relief requested in the OCSs. (Compl., Adv. Pro. No. 15-01127, ECF No. 1.)

<u>DISCUSSION</u>

The issues the Court is called upon to decide in this case concern which level or levels of government are responsible for accepting the various applications and issuing the appropriate permits for the VLT Facility.

A.    <u>Jurisdiction</u>

A bankruptcy court may retain jurisdiction post-confirmation under §§ 945 and 1142 of the Bankruptcy Code. Section 945 allows the court to "retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan." 11 U.S.C. § 945(a). Section 1142(b), made applicable to Chapter 9 cases by § 901(a), allows the court to direct the debtor or any other necessary party to perform any acts that are required for consummation of the plan. 11 U.S.C. § 1142(b). Two requirements must be satisfied for a matter to fall under the bankruptcy court's post-confirmation jurisdiction: "First, the matter must have a 'close nexus to the bankruptcy plan or proceeding.'" <u>General Media v. Guccione (In re General Media, Inc.)</u>, 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (quoting <u>Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)</u>, 372 F.3d 154, 168 (3d Cir. 2004)). Second, the plan must provide that the court retains jurisdiction post-confirmation. <u>General Media</u>, 335 B.R. at 73-74 (citing <u>Hosp. and Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.)</u>, 7 F.3d 32, 34 (2d Cir.1993). To meet the nexus test, the matter must relate directly to the meaning, implementation, or consummation of the plan. <u>General Media</u>, 335 B.R. at 74.

In this case, both requirements are met. Under the Plan, the Court retained exclusive jurisdiction to the fullest extent permitted by law of all matters arising under, arising out of, arising in, or related to the Debtor's Chapter 9 case. <u>See</u> 2d Am. Plan, art. XIII, ECF No. 318. The Plan specifically provides for retention of jurisdiction "[t]o take any action and issue such orders as may

6

be necessary to construe, implement, execute, and consummate the Plan . . . ." Id. at art. XIII.A.12. This matter is one with a close nexus to the Plan. It is undisputed that construction and operation of the VLT Facility is critical to the implementation of the Plan. Therefore, the Court has subject matter jurisdiction over this proceeding.

There is no question that Court may exercise personal jurisdiction over the County. The County has previously appeared in this case and is a creditor of Suffolk OTB. See Resp. at 2-3, ECF No. 232; Notice of Appearance, ECF No. 222.

The Court also has personal jurisdiction over Brookhaven. The VLT Facility will be located in Brookhaven, and Brookhaven has a statutory duty to receive and review the site plan application. Further, Brookhaven, a political subdivision of New York State, does not enjoy Eleventh Amendment immunity. See Lake County Estates v. Tahoe Regional Planning Agency, 440 U.S. 391 (1979) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities . . . .").

B.     Building Permit and Certificate of Occupancy

Before Suffolk OTB can construct the VLT Facility, it must obtain a building permit, and once construction is complete, it must obtain a certificate of occupancy to operate the VLT Facility. The Uniform Code requires that all buildings built in New York State have a building permit prior to construction and have a certificate of occupancy once construction is complete. 19 N.Y.C.R.R. § 1203.3. Rule 1203.3(a) states that a building permit is required for any work that must conform to the Uniform Code and a certificate of occupancy is required for any work subject to a building permit. 19 N.Y.C.R.R. §§ 1203.3(a) and (d). Therefore, Suffolk OTB must acquire a building permit from an entity responsible for administering and enforcing the Uniform Code before

constructing the VLT Facility and must acquire a certificate of occupancy once construction is complete.

New York Executive Law § 381 provides that "[e]xcept as may be provided in regulations of the secretary pursuant to subdivision one of this section, every local government shall administer and enforce the uniform fire prevention and building code . . . ." N.Y. Exec. Law § 381(2). Brookhaven has adopted local laws creating a Building Construction Administration that is generally responsible for enforcing and administering the Uniform Code within its borders. See Town of Brookhaven Municipal Code §§ 16-1 et seq. In the case of a regional off-track betting corporation ("OTB"), however, the regulations promulgated by the Secretary of State pursuant to Executive Law § 381(1) have provided for an exception to that general rule. In particular, Rule 1201.2(c) provides that

> [a] county or a city which participates in a regional off-track betting corporation established pursuant to article V of the Racing, Pari-Mutuel Wagering and Breeding Law shall be accountable for administration and enforcement of the Uniform Code with respect to buildings, premises and equipment in the custody of, or activities related thereto undertaken by, such corporation, whenever such buildings, premises, equipment or activities are located or occur within the boundaries of the respective county or city.

19 N.Y.C.R.R. § 1201.2(c). Suffolk OTB is a regional off-track betting corporation established pursuant to Article V of the Racing, Pari-Mutuel Wagering and Breeding Law. 2d Am. Disclosure Statement at 13, Case No. 12-43503, ECF No. 298. The County participates in Suffolk OTB under Racing Law §§ 501 and 502; in fact, it is the only participant in Suffolk OTB. Id. at 14. The VLT Facility will be a building in the custody of Suffolk OTB and will be located within Suffolk County. Id. at 1-2. Therefore, the County is accountable for the administration and enforcement of the Uniform Code with respect to the VLT Facility under Rule 1201.2(c).

Any analysis of Rule 1201.2(c) supports this conclusion. First, the Rule is clear and unambiguous on its face. It states that a county participating in an OTB *shall* be accountable for

administration and enforcement of the Uniform Code with respect to buildings in the custody of the OTB that are located in that county. Second, under principles of statutory construction, the specific governs the general. See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general.") Executive Law § 381(2) and Rule 1203.2 provide the general rules for administration and enforcement of the Uniform Code. Rule 1201.2(c) provides a specific exception to those general rules with respect to buildings in the custody of an OTB. Executive Law § 381(2) also specifically provides for exceptions based on regulations issued by the Secretary of State under Executive Law § 381(1).

The notes accompanying the proposal and adoption of the current version of Rule 1201.2 further support the conclusion that the County is required to administer and enforce the Uniform Code with respect to the VLT Facility. The Rule was designed to make sure that only one entity would be responsible for administering and enforcing the Uniform Code with respect to OTBs. 10 N.Y. Reg. 31 (May 4, 1988). The previous system, where multiple jurisdictions had authority to administer and enforce the Uniform Code, "discouraged any particular county from taking responsibility for enforcing the code with regard to a particular building." Id. The proposal specified "that the county wherein a particular [OTB] building is located will be responsible for code enforcement in connection with such building." Id. Also, the notes accompanying the adoption of the Rule state that because the particular counties and cities participating in the OTBs are the primary beneficiaries of their activities, "it is entirely appropriate for such counties and cities to assume the responsibilities of Uniform Code enforcement . . . ." 10 N.Y. Reg. 37 (August 10, 1988).

This interpretation is also supported by an Opinion of the New York Attorney General. The Attorney General was asked whether Rule 1201.2(c)[4] applied to simulcast facilities licensed under Racing Law § 1003. 1994 N.Y. Op. Att'y Gen. 11, 1994 WL 281944. The Attorney General concluded that the Rule "by its terms clearly is applicable to simulcast facilities . . . and that the participating county or city where the building is located is responsible for enforcement of the State's Uniform Code." Id. The VLT Facility will be a simulcast facility located in Suffolk County. Therefore, the County is responsible for administering and enforcing the Uniform Code with respect to the VLT Facility.

In its initial brief in response to the Second OSC, the County argued that Rule 1201.2(c) was designed for instances where multiple counties participate in a regional OTB. Obj. ¶¶ 6-10, ECF No. 428. Its position was that this rule was intended to address situations where it is unclear which county should administer and enforce the Uniform Code due to overlapping jurisdictions. Id. The County also pointed out that the rule-making history discusses participating cities administering and enforcing the Uniform Code with respect to OTB facilities in their boundaries. Id. at 9. It further argued that Suffolk OTB should utilize the Brookhaven's local building code because that "process has worked extremely well over the past decades . . . ." Id. ¶¶ 12-14.

To the extent that the County argues that Rule 1201.2(c) requires Brookhaven to administer and enforce the Uniform Code with respect to the VLT Facility, the County misreads the rule. Brookhaven is a town, not a city, and it does not participate in Suffolk OTB. Therefore, Rule 1201.2(c) has no application to Brookhaven in this case. Moreover, past practice does not alter the County's obligations under New York's administrative code.

---

[4] At the time, Rule 1201.2(c) was numbered as Rule 441.2(c). The current Rule 1201.2(c) is identical to the old Rule 441.2(c). This decision will refer to the Rule as Rule 1201.2(c).

The County's argument that Rule 1201.2(c) applies only to multi-county OTBs is unsupported by the language of the Rule or the rule-making history. Rule 1201.2 was originally adopted in connection with the enactment of the Uniform Code in 1984. 5 N.Y. Reg. 31-34 (October 12, 1983). The first version did not include subsection (c) as it currently reads. Id. at 33-34. The relevant language in the original rule was contained in subsection (b), which provides that "[a] city, village, town, or county shall be accountable for administration and enforcement of the Uniform Code with respect to buildings . . . in the custody of . . . any special purpose unit of local government created by or for the benefit of" the county, town, etc. Id. at 33. The notes accompanying the 1988 revisions to the Rule, which added subsection (c), make it clear that, under the original rule, an OTB was a "special purpose unit of local government" governed by subsection (b). 10 N.Y. Reg. 31 (May 4, 1988). Therefore, counties that participated in an OTB would be accountable for administering and enforcing the Uniform Code with respect to buildings in the custody of that OTB. Id.

The regulatory impact statement for the 1988 revisions states that the purpose of adding subsection (c) to the rule was to clarify "*which* particular county shall be accountable for administration and enforcement of the Uniform Code with respect to a building" in its custody. Id. (emphasis added). The statement goes on to note that OTBs "are special purpose units of local government created for the benefit of all the counties within the particular region covered by the individual corporation . . . ." Id. This meant that, for multi-county regions, every county had the concurrent responsibility to administer and enforce the Uniform Code. Id. This overlapping jurisdiction created problems because it "discouraged any particular county from taking responsibility . . . ." Subsection (c) was added to clarify that the responsibility would fall on the county where the building was located. Id. This, however, did not change the requirement that a

county participating in an OTB is accountable for administering and enforcing the Uniform Code with respect to buildings in the custody of that OTB.

Suffolk OTB was established by and for the benefit of the County. The County is the only participating local government in Suffolk OTB. As a result, the County is accountable for administering and enforcing the Uniform Code with respect to buildings in the custody of Suffolk OTB under the original rule and in its current, amended form.

C.    Site Development Plan Review

In addition to the building permit, Suffolk OTB must also have a site development plan approved before it can begin construction of the VLT Facility. The responsibility for reviewing the site development plan belongs to Brookhaven.

1.    *Suffolk OTB Is Subject to Brookhaven's Local Land Use Laws*

Site development plan review is a tool that local governments use to regulate land use. James A. Coon, New York Department of State: Division of Local Government Services, Site Plan Review 1, available at https://www.dos.ny.gov/lg/publications/Site_Development_Plan _Review.pdf. Article 16 of New York's Town Law grants zoning and planning powers to towns throughout the state. See N.Y. Town Law § 261 et seq. Town Law § 274-a gives towns, like Brookhaven, the power to require site development plan review as a condition for the issuance of a building permit. Id. § 274-a(2). Brookhaven has adopted a local ordinance that requires all buildings in Brookhaven zoning districts to have a site development plan approved. See Town of Brookhaven Municipal Code § 85-113. While Brookhaven is not accountable for the administration and enforcement of the Uniform Code with respect to the VLT Facility (and thus, will not issue the building permit), Suffolk OTB is still presumptively subject to Brookhaven's local land use laws.

The controlling New York case on the application of local land use laws to an instrumentality of government is <u>Matter of County of Monroe</u>, 72 N.Y.2d 338, 530 N.E.2d 202 (1988). In that case, Monroe County wanted to expand an airport located within the city limits of Rochester. <u>Id.</u> at 202. A dispute arose between the county and the city over whether the city's approval of the site development plan for the airport was required. <u>Id.</u> In response, the Court of Appeals adopted a balancing test to resolve land use disputes between government units. <u>Id.</u> at 204. "This balancing approach subjects the encroaching governmental unit in the first instance, in the absence of an expression of contrary legislative intent, to the zoning requirements of the host governmental unit where the extraterritorial land use would be employed." <u>Id.</u> (citation omitted). Where the encroaching governmental unit seeks immunity from local site development plan oversight, the court weighs several factors to determine which, if any, land use laws should apply to the particular governmental use. <u>Id.</u> As Suffolk OTB is a public benefit corporation established under Articles V and VI of the Racing Law, it is an instrumentality of government and, under <u>Monroe</u>, is presumptively subject to the local land use laws of Brookhaven.[5]

This exact issue was also addressed in the opinion from the New York State Attorney General discussed above. In addition to the question whether Rule 1201.2(c) applied to a simulcast facility, the Attorney General was also asked whether local land use laws would apply to such a facility. 1994 N.Y. Op. Att'y Gen. 11, 1994 WL 281944. The Attorney General concluded that local land use laws are applicable to a simulcast facility. <u>Id.</u> The Attorney General noted that

---

[5] It is not necessary to determine whether Suffolk OTB is considered an agency of the County. Under New York law, a public benefit corporation is a legal entity that is "separate and apart from the State, its agencies and political subdivisions." <u>Bordeleau v. State</u>, 18 N.Y.3d 305, 316, 960 N.E.2d 917, 922 (2011) (quoting <u>Schulz v. State</u>, 84 N.Y.2d 231, 246, 639 N.E.2d 1140, 1147 n.4 (1994)) (internal quotations omitted). Whether a public benefit corporation can be considered an agency of government for purposes of determining whether a specific law applies requires "a particularized inquiry into the nature of the instrumentality and the statute claimed to be applicable to it . . . ." <u>John Grace & Co. v. State Univ. Const. Fund</u>, 44 N.Y.2d 84, 88, 375 N.E.2d 377, 379 (1978). Regardless of whether Suffolk OTB is an agency of the County or a separate entity, it is presumptively subject to Brookhaven's zoning laws under <u>Monroe</u> as an instrumentality of government.

Monroe makes encroaching governmental units subject to local land use laws unless there is clear legislative intent to the contrary, and that no evidence indicates that the Legislature intended to exempt simulcast facilities from local land use laws. Id. To the contrary, Racing Law § 1003(2)(f) requires a written confirmation from local officials that the location and number of expected patrons of a simulcast facility complies with all applicable local ordinances before the Gaming Commission may issue a license for such a simulcast facility. Id.; N.Y. Rac. Parimut. Wag. & Breed. Law § 1003(2)(f). The Attorney General concluded simulcast facilities licensed under Racing Law § 1003 "are subject to local regulations relating to the location of the facilities and the number of patrons expected to occupy them." 1994 N.Y. Op. Att'y Gen. 11, 1994 WL 281944. The issues raised by the orders to show cause now before this Court are identical to the questions addressed in the Attorney General's opinion.

Brookhaven argues that it has no authority to approve or disapprove Suffolk OTB's applications. It points to Racing Law § 1003 in support of its argument that the Gaming Commission is responsible for reviewing Suffolk OTB's application. Resp. and Obj. at 2, ECF No. 381. Brookhaven also cites several cases where New York state courts have ruled that local zoning ordinances do not apply to OTB buildings. Id. at ¶¶ 13-14.

First, Brookhaven misunderstands the application of Racing of Law § 1003. That law provides that the Gaming Commission is responsible for *licensing* a simulcast facility. It does not make the Gaming Commission accountable for administering and enforcing the Uniform Code with respect to simulcast facilities, nor does it preempt local land use laws. Brookhaven's argument that its only requirement under the law is to certify that the location of the VLT Facility is properly zoned under Racing Law § 1003 is misplaced. It is true that with respect to *licensing*, Brookhaven's role is limited to that certification. Racing Law § 1003, however, does not speak to whether a

simulcast facility is required to comply with local land use laws. Under Monroe, instrumentalities of government are presumptively subject to local land use laws absent contrary legislative intent. Monroe, 530 N.E.2d at 204. As the Attorney General opinion noted, Racing Law § 1003(f)(2) supports the conclusion that the Legislature intended for simulcast facilities to be subject to local land use laws.

Second, all the cases cited by Brookhaven where courts held that local land use laws did not apply to an OTB predate Monroe. Prior to Monroe, New York courts applied the governmental-proprietary interest test. Monroe, 530 N.E.2d at 203. That test provided that local land use laws did not apply to an instrumentality of government when it was pursuing a traditional government activity as opposed to a proprietary function. Id. The Monroe court retired this test, which it characterized as a labeling device, and adopted a "balancing of public interests" analytical approach. Id. Under the new test, the court assumes that the encroaching instrumentality is subject to local land use laws absent a contrary legislative intent. Id. at 204. Absent a challenge to local authority by the encroaching governmental unit, the default rule is that it must comply with applicable local land use laws.

Brookhaven further argues that it is not required to review Suffolk OTB's site development plan because the County and not Brookhaven will be issuing the building permit. This argument is not supported by Brookhaven's Town Code (the "Town Code"). Town Code § 85-113(A) states that "[s]ite plan review and approval is required in all zoning districts for all buildings and structures or land use and/or for all alterations or changes thereto . . . ." Town of Brookhaven Municipal Code § 85-113(A). Nothing in this subsection conditions the requirement of site development plan review on whether Brookhaven issues the building permit. Two subsections of Town Code § 85-113 deal directly with site development plan review in the context of issuing a

building permit: Subsection B requires a site development plan to be submitted to Brookhaven "prior to the filing of the application for a building permit . . . ." Id. § 85-113(B). Subsection K conditions the issuance of a building permit on final site development plan approval as well as all proper approvals and authorizations that might be necessary from any other authority. Id. § 85-113(K). Subsection B only addresses the timing of when a site development plan should be submitted for review. It does not state that site development plan approval is required only if Brookhaven will issue the permit. Subsection K requires a builder to get final site development plan approval and all other necessary permits "prior to the issuance of a building permit(s)." Id. This subsection speaks to the generic issuance of *a* building permit. No fair reading of this statute would relieve an entity seeking to construct a building in a zoning district of Brookhaven from the responsibility of submitting a site development plan for review and approval in an instance where Brookhaven is not issuing the building permit.

Based on Monroe, the statutes, and the Attorney General's opinion, the Court finds that Suffolk OTB and the proposed VLT facility are presumptively subject to Brookhaven's local land use laws.

2. *Brookhaven Is Required to Accept and Act on Suffolk OTB's Application for Site Development Plan Review*

As Suffolk OTB is presumptively subject to Brookhaven's local land use laws, Brookhaven must accept and review Suffolk OTB's site development plan. Brookhaven's Town Code requires (with certain exceptions not relevant here) site development plan review and approval in all zoning districts for all buildings. Town of Brookhaven Municipal Code § 85-113(A). It states that the applicant "shall" submit the site development plan to Brookhaven's Planning Board. Id. § 85-113(B). Once a site development plan has been submitted, Brookhaven's Planning Board "shall"

render a decision within 62 days.[6] Id. § 85-113(I). The use of the mandatory "shall" language denotes a ministerial duty imposed by statute and requires Brookhaven to accept the application and act on it. See Devito v. McGuire, 124 Misc. 2d 65, 66, 475 N.Y.S.2d 730, 731 (Sup. Ct. 1984) (noting that use of "shall" in statute required public official to perform duty).

To be clear, Brookhaven cannot be compelled, at this stage of the proceedings, to *approve* the site development plan. Approval of the site development plan is a discretionary act and may not be compelled. Klostermann v. Cuomo, 61 N.Y.2d 525, 539, 463 N.E.2d 588, 595 (1984). A municipal body may only be compelled to perform "a purely ministerial act where there is a clear right to the relief sought." Id. (quoting Legal Aid Soc. of Sullivan Cty., Inc. v. Scheinman, 53 N.Y.2d 12, 16, 422 N.E.2d 542, 543-44 (1981)) (internal quotations omitted). But, under New York law, though a court may not order officials to perform a discretionary duty, it may compel them to perform an act mandated by law "regardless of whether they may exercise their discretion in doing so." Klostermann, 463 N.E.2d at 596. In other words, though a court may not tell an agency *how* to decide on an application, it can tell the agency that it *must* decide on the application if the agency is duty-bound to do so. Id.; see also Stuart & Stuart, Inc. v. New York State Liquor Auth., 29 A.D.2d 176, 177, 286 N.Y.S.2d 861, 862 (1st Dep't 1968) (holding that agency could not be directed to approve or disapprove license but could be directed to decide on the application).[7]

Though site development plan approval is a discretionary act, a local government can be compelled to either approve or disapprove a site development plan when it fails to do so. In

---

[6] This deadline applies if no public hearing is held. If a public hearing is to be held, it must be held within 45 days of the application and the Planning Board must render its decision within 45 days of the hearing. Town of Brookhaven Municipal Code § 85-114.
[7] Though site development plan approval is a discretionary act, Brookhaven's determination to approve or disapprove Suffolk OTB's site plan is subject to judicial review.

Mamaroneck Beach & Yacht Club, Inc. v. Fraioli, 24 A.D.3d 669, 808 N.Y.S.2d 303 (2d Dep't 2005), a real property owner brought an Article 78 petition seeking to compel a village planning board to proceed with site development plan review. Id. at 305. The Supreme Court, Westchester County granted the petition and the Appellate Division affirmed. Id. The court held that the village's failure to act on the site development plan within the 45 days required by local ordinance warranted mandamus relief. Id. Similarly, in Golden Horizon Terryville v. Pruinowski, 63 A.D.3d 930, 882 N.Y.S.2d 174 (2d Dep't 2009), an owner of real property sued Brookhaven seeking to compel it to make a decision regarding the plaintiff's site development plan. Id. at 175-76. The Supreme Court, Suffolk County denied Brookhaven's motion to dismiss and the Appellate Division affirmed, holding that the plaintiff had stated a claim for mandamus relief. Id. The court held that allegations that Brookhaven had intentionally delayed approving or denying the plaintiff's site plan until a moratorium could be issued stated a claim for relief under Article 78. Id. at 177-78. Thus, Brookhaven is under a duty to accept and review submitted site development plans.

Brookhaven must accept and act upon Suffolk OTB's site development plan application according to the Town Code and New York State law.

D.     SEQR

Before any permits may be issued or other significant action taken, Suffolk OTB must complete its SEQR review. 6 N.Y.C.R.R. § 617.3(a). The Department of Environmental Conservation regulations provide that "[n]o agency involved in any action may undertake, fund or approve the action until it has complied with the provisions of SEQR." Id. Under New York's Environmental Conservation Law, "action" includes issuing a "permit license, certificate, or other entitlement for use or permission to act . . . ." N.Y. Envtl. Conserv. Law § 8-0105(4)(i). Approval

of Suffolk OTB's site development plan and the issuance of a building permit are both "actions" under that definition. See Tinker Street Cinema v. Town of Woodstock, 256 A.D.2d 970, 972, 681 N.Y.S.2d, 907, 908-09 (3d Dep't 1998) (holding that site development plan application was not complete until provisions of SEQR were complied with).

Suffolk OTB, as the lead agency, is directed to promptly complete the SEQR process.

E.    General Municipal Law §§ 239-*l* and 239-m

Before Suffolk OTB's site development plan can be approved, Brookhaven and the County must also comply with the provisions of New York's General Municipal Law ("GML") §§ 239-*l* and 239-m. Those sections require local governments to refer site development plans to a county or regional planning agency under certain circumstances. See N.Y. Gen. Mun. Law §§ 239-*l* and 239-m. GML § 239-m also uses the mandatory "shall" language. N.Y. Gen. Mun. Law § 239-m(2). Therefore, if the planning or zoning action is required to be referred, the referring body must make the referral. Failure to comply with the terms of GML § 239-m is a jurisdictional defect that renders subsequent action of the local government void. See Ernalex Const. Realty Corp. v. City of Glen Cove, 256 A.D.2d 336, 337-38, 681 N.Y.S.2d 296, 297-98 (2d Dep't 1998) (collecting cases).

Brookhaven previously submitted Suffolk OTB's site development plan to the County, but that process remains incomplete. Tr. of Oct. 28, 2015 Hr'g 18. Brookhaven is directed to complete the required process and Brookhaven and the County are directed to comply with the terms of GML §§ 239-*l* and 239-m when conducting their review of the site development plan for the VLT Facility.

<u>CONCLUSION</u>

For the reasons stated above, the County is accountable for administering and enforcing the Uniform Code with respect to the VLT Facility, and Suffolk OTB is presumptively subject to

Brookhaven's local land use laws. Brookhaven is directed to accept Suffolk OTB's site development plan application and review it in accordance with and according to the schedule prescribed in Brookhaven's Town Code and New York State law. The County is directed to accept Suffolk OTB's application for a building permit and issue such a permit if the application conforms to the standards of the Uniform Code. The County is further directed to issue a certificate of occupancy for the VLT Facility once construction is complete if the construction conforms to the standards of the Uniform Code. Suffolk OTB is directed to complete its SEQR review prior to submitting final applications to the County or Brookhaven. The parties are directed to submit an order consistent with this decision within one week.



**Dated: Brooklyn, New York**
       **November 30, 2015**

                                                 **Carla E. Craig**
                                    **United States Bankruptcy Judge**