**ECKERT SEAMANS CHERIN & MELLOTT, LLC**　　**Hearing Date: TBD**[1]
10 Bank Street, Suite 700　　　　　　　　　　　　**Hearing Time: TBD**
White Plains, NY  10606　　　　　　　　　　　　**Objection Deadline: TBD**
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Kelly Robreno Koster, Esq.
Ren-Ann A. Wang, Esq.

*Counsel for the Adjusted Debtor Suffolk Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | |
| | Chapter 9 |
| **SUFFOLK REGIONAL OFF-TRACK** | |
| **BETTING CORPORATION,** | Case No. 12-43503-CEC |
| | |
| **Adjusted Debtor.** | |

### MOTION OF THE ADJUSTED DEBTOR SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION TO CLOSE CHAPTER 9 CASE

Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB" or the "Adjusted Debtor"), by and through its undersigned counsel, Eckert Seamans Cherin & Mellott, LLC, respectfully submits this motion for entry of an order (the "Motion"), substantially in the form attached hereto as Exhibit A, closing the Chapter 9 case.[2]  In support of this Motion, the Adjusted Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.　　This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] Suffolk OTB requested a hearing date for this motion and was given the date of July 22, 2020 at 2:30 p.m. However, Suffolk OTB may need to move by order to show cause for a hearing date prior to June 30, 2020 in order to qualify for financial assistance under the CARES Act.

[2] Because Chapter 9 cases do not have an estate, there is no need for a final decree to be issued by the Court in this case. *See* 11 U.S.C. § 541; *see also* Federal Rule of Bankruptcy Procedure Section 3022.

2.      Venue is proper in this Court under 28 U.S.C. § 1408 because Suffolk OTB's principal place of business is located at 425 Oser Avenue, Suite 2, Hauppauge, New York 11788.

3.      Moreover, this Court retained jurisdiction over this Chapter 9 Case pursuant to Article XIII of the Confirmed Plan. Confirmation Order at 16, ¶ 14; Confirmed Plan Art. XIII.

4.      The statutory basis for the relief requested herein is § 945(b) of the United States Bankruptcy Code (the "Bankruptcy Code").

## EXIGENT CIRCUMSTANCES

5.      Suffolk OTB has received term sheets or strong indications of interest from two financial institutions – Community Federal Savings Bank (the "Bank") and Entrepreneur Growth Capital, LLC (the "Non-Bank") -- to assist with both paying off the remaining approximately $4.6 million owed to the Class 4 general unsecured creditors and a $3,978,828 loan under the Paycheck Protection Program, 15 U.S.C.S. § 636(a)(36) (the "PPP") of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 134 Stat. 281, as amended by the Paycheck Protection Program Flexibility Act, Pub. L. No. 116-142, 134 Stat. 643 (2020) (the "CARES Act"), provided that this Chapter 9 case is closed no later than the end of June 2020. Under the Confirmed Plan, all remaining creditors must be paid in full by December 2020.

## FACTUAL BACKGROUND

### A.  The Petition, Confirmed Plan and Plan Supplement

6.      Suffolk OTB filed a voluntarily petition for relief under Chapter 9 of Title 11 of the United States Code on May 11, 2012 with this Court commencing the above-captioned bankruptcy case (the "Chapter 9 Case").

7.      The United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors in this Chapter 9 Case (the "Committee") on August 10, 2012.

8.      On September 11, 2014, Suffolk OTB filed its *Second Amended Plan for the Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation dated September 11, 2014* [Dckt. No. 318-1] (as amended, the "Plan" or "Confirmed Plan"). The Confirmed Plan is incorporated by reference as if fully restated herein at length.

9.      On October 30, 2014, the Court issued the "Confirmation Order" [Dckt. No. 326] confirming the Confirmed Plan. The Confirmation Order is incorporated by reference as if fully restated herein at length.

10.     The Confirmed Plan became effective on October 31, 2014 (the "Effective Date"). [Dckt. No. 329].

11.     On April 18, 2019, the Adjusted Debtor filed a Motion to Approve the Cumulative Plan Supplement (the "Plan Supplement") extending the term of the Post-Effective Date Committee until June 1, 2021, extending the commencement date of the Accelerated Payment Schedule until October 1, 2019, extending the Confirmed Plan default deadline until December 20, 2020, and allowing the Adjusted Debtor after October 1, 2019 to repay in full as a new convenience class its unsecured creditors holding Allowed Class 4 Claims that have less than a total of $2,000 of remaining outstanding debt as of June 1, 2019 within a total budget of $40,000. [Dckt. No. 807].

12.     On May 21, 2019, the Post-Effective Date Committee filed a Letter in Support of the Plan Supplement.

13.     No objections to the Plan Supplement were filed by the May 21, 2019 deadline.

14.     The Court held a hearing on the proposed Plan Supplement on May 29, 2019 and approved the Plan Supplement on May 30, 2019 [Dckt. No. 818].

15.    To date, the only remaining payment obligations under the Confirmed Plan and Plan Supplement are Class 4 claims valued at approximately $4.6 million.

**B.    The Delaware North Adversary Proceeding**

16.    On October 7, 2019 Suffolk OTB filed a complaint, *Suffolk Regional Off-Track Betting Corporation v. Delaware North Companies, Inc., Delaware North Companies Gaming & Entertainment, Inc., DNC Gaming Management in Suffolk, LLC, and Delaware North Islandia Properties, LLC*,  A.P. Case No. 19-01133-CEC (Bankr. E.D.N.Y., October 7, 2019) (the "DNC AP"), which commenced an adversary proceeding against Delaware North Companies, Inc., Delaware North Companies Gaming & Entertainment, Inc., DNC Gaming Management in Suffolk, LLC, and Delaware North Islandia Properties, LLC (collectively, "Delaware North"), the details of which were summarized in the Supplemental Status Update Letter filed on October 7, 2019 and the Complaint attached to that letter [Dckt. No. 830]. On November 7, 2019, Delaware North filed a Motion to Dismiss and attendant documents seeking to dismiss certain claims in the Complaint [A.P. Dckt. Nos. 8–10]. Suffolk OTB and Delaware North conducted a Rule 7026(f) conference on November 14, 2019. On November 20, 2019, the parties filed the Joint Rule 7026(f) Discovery Plan [A.P. Dckt. No. 12].

17.    A hearing was held on Delaware North's Motion to Dismiss on January 8, 2020, and the Motion to Dismiss was denied for the reasons stated by the Court on the record at the hearing [A.P. Dckt. No. 25]. Delaware North filed an Answer and Counterclaims on January 27, 2020 [A.P. Dckt. No. 30]. Suffolk OTB filed an Answer to the Counterclaims on February 17, 2020 [A.P. Dckt. No. 34]. Due to the effects of the global pandemic, the parties agreed to temporarily suspend their deposition schedule and discuss the feasibility of remote, electronic discovery proceedings, with the goal of possibly commencing depositions in May 2020.  On April

13, 2020, the parties filed a letter with this Court (the "April 13th Letter") requesting an adjournment of the May 28, 2020 trial date to the Court's first available date in July 2020 or thereafter [A.P. Dckt. No. 39]. A telephonic conference regarding the April 13th Letter was held on May 6, 2020, during which the Court set a new trial date of July 13, 2020.

18.     On June 15, 2020, Suffolk OTB and Delaware North filed a Notice of Proposed Joint Stipulation of Dismissal seeking to dismiss the adversary proceeding with prejudice. [A.P. Dkct. No. 41]. The Court entered the Joint Stipulation of Dismissal Order on June 23, 2020. [A.P. Dkct. No. 43].

## RELIEF REQUESTED

19.     By this motion, the Adjusted Debtor seeks entry of an order closing its Chapter 9 case pursuant to Section 945(b) of the Bankruptcy Code.

## BASIS FOR RELIEF

20.     Bankruptcy Code Section 945(b) provides that "the court shall close the case when administration of the case has been completed." 11 U.S.C.A. § 945 (West).

21.     While Section 945 does not define when the administration of a case has been completed, the Court should look to the standard used in determining whether a Chapter 11 case is "fully administered" under Section 350(a) of the Bankruptcy Code and implemented by Bankruptcy Rule 3022.

22.     When determining whether a Chapter 11 case has been "fully administered," the 1991 Advisory Committee Note to Bankruptcy Rule 3022 supplies the following non-exhaustive list of factors that should be considered:

> a.   Whether the order confirming the plan has become final;
>
> b.   Whether deposits requires by the plan have been distributed;

    c.  Whether the property proposed by the plan to be transferred has been transferred;

    d.  Whether the debtor or the successor to the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

    e.  Whether payments under the plan have commenced; and

    f.  Whether all motions, contested mattes and adversary proceedings have been finally resolved.

23.    Here, all of the factors identified by the Advisory Committee weigh in favor of closing this Chapter 9 Case.

24.    First, the Confirmation Order became final over five years ago [Dckt. No. 326].

25.    Additionally, all of the payments under the Confirmed Plan will have been made or will be made substantially, contemporaneously with the closure of the Chapter 9 Case, and all other obligations under the Confirmed Plan have already been satisfied.

26.    Lastly, with the settlement of the Delaware North adversary proceeding, only the matters listed in the next section of this motion remain open.  As discussed below, none of the matters that remain open is a bar to closing this case.

27.    Accordingly, administration of this case has been completed and the Court is empowered to order the case closed under Section 945 of the Bankruptcy Code.

**THE COURT MAY CLOSE THE CASE AND RETAIN LIMITED JURISDICTION OVER PENDING APPEALS, PRIOR ORDERS AND CERTAIN AGREEMENTS.**

    A.  **Current Status of the Tomasino Litigation**

22.    As the Court is well aware, on December 19, 2018, this Court filed its Proposed Findings of Fact and Conclusions of Law in *Jennifer Tomasino, et al., v. Inc. Vil. of Islandia*, *et*

*al.*, Adv. Pro. 1-18-01033-CEC, 2018 NY Slip Op. 30958[U] (Sup. Ct., Suffolk County 2018) (the "Tomasino Adversary Proceeding" or "Tomasino Adv. Pro.") [Tomasino Adv. Pro. Dckt. No. 100] recommending that Suffolk OTB's Motion for Summary Judgment be granted. The full procedural history of this Adversary Proceeding was set forth in numerous status reports, most recently in the June 19, 2019 Status Letter [Dckt. No. 820]. Plaintiffs' counsel, Anton J. Borovina and Paul Sabatino, II, filed objections to this Court's Proposed Findings of Fact and Conclusions of Law [Adv. Pro. Dckt. No. 104]. The Defendants, Suffolk OTB included, filed their respective responses to the Plaintiffs' objections [Adv. Pro. Dckt. Nos. 105–08]. The case was docketed in the United States District Court for the Eastern District of New York on January 23, 2019 under case number 1:19-mc-00189-JFB [Adv. Pro. Dckt. No. 111; Misc. Pro. Dckt. No. 1]. The case was initially assigned to Chief Judge Dora L. Irizarry, but was reassigned Judge Arthur D. Spatt, who recused himself, and the case was then reassigned to Judge Denis R. Hurley. The case was once again reassigned to Judge Joseph F. Bianco. The Plaintiffs requested an oral argument on their objections, and Judge Bianco ordered an oral argument to be held on May 28, 2019 at 1:00 p.m. However, Judge Bianco adjourned that oral argument without a date on May 16, 2019, the day before he was sworn into his new position on the Second Circuit. The case was once again reassigned on June 10, 2019, this time to Judge Joan M. Azrack. There have been no new entries on that docket since June 10, 2019.

### B. <u>Authority for Retention of Jurisdiction Over the Tomasino Appeal</u>

23.     "[T]he dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." *In re Porges*, 44 F.3d 159 (2d Cir. 1995).

24.      The decision to retain jurisdiction is left to the court's discretion and may be premised upon such factors as judicial economy; convenience to the parties, fairness, and Comity.    *In re Millenium Seacariers,* 354 B.R. 674, 47 Bankr. Ct. Dec. (CRR) 113 (Bankr. S.D.N.Y. 2006).

25.      Here, in addition to its retention of exclusive jurisdiction under the Confirme Plan, the *Millenium* factors dictate that the Court explicitly retain jurisdiction over the Tomasino Appeal to the extent necessary in its order closing the Chapter 9 case.

### C.  Enforcement of Prior Orders

26.      The Second Circuit and other bankruptcy courts in this district have ruled that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and **especially** confirmation orders. *See Luan Inv. S.E. v. Franklin Corp. (In re Petrie Retail, Inc.),* 304 F.3d 223, 230 (2d. Cir.2002) ("*Petrie Retail* ") ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."); *In re Charter Communications,* No. 09–11435, 2010 WL 502764, at *4 (Bankr.S.D.N.Y. Feb.8, 2010) ("*Charter Communications* ") (Peck, J.), *appeal docketed,* No. 1:10–CV–02930 (GBD) (S.D.N.Y. Apr. 4, 2010) (declaring that the bankruptcy court "unquestionably has the authority and discretion to rule on the Enforcement Motion and consider whether the causes of action [brought in another court] have been released and should be enjoined" where bankruptcy court "retained exclusive jurisdiction to interpret injunction that is part of its own order confirming the Plan"); *In re Texaco, Inc.,* No. 87–20142, Hr'g Tr., May, 28, 2010, at 2 (Bankr.S.D.N.Y.2010) (Drain, J.) (determining that the bankruptcy court had jurisdiction to enforce a confirmation order it had entered 22 years earlier).

27.      As Judge Peck explained in *Charter Communications:*

> All courts retain jurisdiction to interpret and enforce their own orders. This proposition recently was confirmed by the United States Supreme Court in *Travelers Indem. Co. v. Bailey,* which found a 'Bankruptcy Court plainly had jurisdiction to interpret and enforce' a confirmation order it had entered twenty years earlier.

2010 WL 502764 at *4 (citing *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009).

28.    Here, the Court has entered several critical orders over which it will retain jurisdiction to enforce, including but not limited to the Confirmation Order, [Dckt No. 326]; Town of Brookhaven Order [Docket No. 476]; and the Tomasino Order [Adv. Pro. Dckt No. 100].

29.    Under the Confirmed Plan, "the Court retains exclusive jurisdiction to the fullest extent permitted by applicable law of all matters arising under, arising out of, arising in or related to the Chapter 9 case and the Plan" including but not limited to "take an action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan . . . [or] for the maintenance of the integrity of the Plan and protection of the Debtor in accordance with section 524 of the Bankruptcy Code following consummation[.]" *See* Confirmed Plan at Art. XIII(A)(12).

30.    For the avoidance of doubt, the Court's authority to retain jurisdiction shall be memorialized in the proposed order to be submitted on this Motion.

### D.    PPP Financing Under CARES Conditioned Upon Closure of the Chapter 9 Case

31.    Suffolk OTB has contacted dozens of financial institutions seeking financing.  These financial institutions have included National Banks, local banks, private equity lenders and other lenders of all types and sizes.

32.     Suffolk OTB is now seeking to obtain certain exit financing, including under the CARES Act.

33.     In that regard, it has received a term sheet from Entrepreneur Growth Capital LLC dated June 22, 2020 which Suffolk OTB accepted, as modified, today for a one (1) year term loan of $6.8 million. This will be used first to repay the remaining amounts due the Class 4 creditors under the Confirmed Plan and then to pay for certain expenses related to the reopening of Jake's 58 and working capital.

34.     Receipt of the CARES Act financing is contingent upon the closure of this Chapter 9 case.

35.     No prior request for the relief sought in this motion has been made to this or any other Court.

36.     Suffolk OTB submits that no separate memorandum of law is necessary as the statutory and case law precedents are cited *supra* in this motion.

## CONCLUSION

For the reasons set forth herein, and the accompanying papers, the Adjusted Debtor respectfully requests that the Court enter the Proposed Order closing this Chapter 9 case and grant such other and further relief as is just and proper.


Dated: White Plains, New York
            June 23, 2020



                              Respectfully submitted,

                              **ECKERT SEAMANS CHERIN & MELLOTT, LLC**

                              By:_____/s/ Christopher F. Graham_____

Christopher F. Graham, Esq.
Kelly Robreno Koster, Esq.
Ren-Ann A. Wang, Esq.

10 Bank Street, Suite 700
White Plains, NY 10606
Tel: (914) 949-2909

cgraham@eckertseamans.com
kkoster@eckertseamans.com
rwang@eckertseamans.com