**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 9 |
| | Case No. 12-43503-CEC |
| **SUFFOLK REGIONAL OFF-TRACK** | |
| **BETTING CORPORATION,** | Hearing Date: June 30, 2020 |
| | Hearing Time: 11:00 a.m. |
| **Adjusted Debtor.** | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF THE ADJUSTED DEBTOR SUFFOLK REGIONAL**
**OFF-TRACK BETTING CORPORATION TO CLOSE CHAPTER 9 CASE**

---

**Dated: June 29, 2020**

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
**Christopher F. Graham, Esq.**
**Kelly Robreno Koster, Esq.**
**Ren-Ann A. Wang, Esq.**
**Annemarie DiNardo Cleary, Esq.***
*Counsel for Adjusted Debtor,*
*Suffolk Regional Off-Track Betting Corporation*
**10 Bank Street, Suite 700**
**White Plains, New York 10606**
**Tel: (914) 949-2909**
**Fax: (914) 949-5424**

*Not admitted in New York.

## <u>TABLE OF CONTENTS</u>

THE COURT MAY CLOSE THE CASE AND RETAIN JURISDICTION
OVER PENDING APPEALS, PRIOR ORDERS AND CERTAIN AGREEMENTS ................. 4

PRELIMINARY STATEMENT ....................................................................................... 4

ARGUMENT .................................................................................................................. 4

THE COURT MAY STILL CONSIDER FUTURE ISSUES ...................................... 7

CONCLUSION.............................................................................................................. 10

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*In re Charter Communications*,
No. 09–11435, 2010 WL 502764, (Bankr. S.D.N.Y. Feb.8, 2010)
appeal docketed, No. 1:10–CV–02930 (GBD) (S.D.N.Y. Apr. 4, 2010) ...................................... 8


*In re Grady Rd. & Bridge Dist.*,
119 B.R. 844, 1990 Bankr. LEXIS 2096 (Bankr. M.D. Fla. 1990) ........................................... 5, 6


*In re Lake Lotawana Cmty. Improvement Dist.*,
2017 Bankr. LEXIS 1290, 77 Collier Bankr. Cas. 2d (MB) 1303,
64 Bankr. Ct. Dec. 40 (W.D. Mo. 2017)................................................................................... 5, 6


*In re: Millenium Seacarriers, Inc.*,
458 F.3d 92, 96 (2d. Cir. 2006)……………………………………………………………………7, 8


*In re Porges*,
44 F.3d 159, 162 (2d. Cir. 1995)................................................................................. 7, 9


*In re Texaco, Inc.*,
No. 87–20142, Hr'g Tr., May, 28, 2010 (Bankr. S.D.N.Y.2010) .................................................. 8


*Luan Inv. S.E. v. Franklin Corp.* (*In re Petrie Retail, Inc.*),
304 F.3d 223, 230 (2d. Cir.2002)................................................................................. 8


*Taniguchi v. Kan Pac. Saipan, Ltd.*,
566 U.A. 560, 566, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012) ................................................. 5


*Travelers Indem. Co. v. Bailey*,
557 U.S. 137, 129 S. Ct. 2195, 2205, 174 L.Ed.2d 99 (2009)...................................................... 8

<u>Statutes</u>
11 U.S.C. § 945(b)…………………………………………………………………………………...4, 9

**THE COURT MAY CLOSE THE CASE AND RETAIN JURISDICTION
OVER PENDING APPEALS, PRIOR ORDERS AND CERTAIN AGREEMENTS.**

**PRELIMINARY STATEMENT**

Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB") believes the time has finally come to close this Chapter 9 case. It has been a long and winding road, but as a result of this case, Suffolk OTB will emerge as a successfully adjusted municipal public benefit corporation.

As set forth in the *Motion of the Adjusted Debtor Suffolk Regional Off-Track Betting Corporation to Close Chapter 9 Case* [Dckt. No. 857] (the "Motion"), Suffolk OTB seeks entry of an order closing its Chapter 9 case immediately so that it can take advantage of a nearly $4 million loan and grant being offered through the United States Small Business Administration pursuant to the Paycheck Protection Program enacted as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") and secure other exit financing in the amount of $6.8 million.

All of Suffolk OTB's creditors have been paid or will be paid shortly after this case closes and escrowed funds totaling $4.6 million, which have been earmarked to pay the remaining Class 4 creditors, are released.  This financing is critical to Suffolk OTB's successful exit from this bankruptcy case.

**ARGUMENT**

Section 945(a) of the U.S. Bankruptcy Code provides, "[t]he court may retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan." Section 945(b) of the U.S. Bankruptcy Code states that "[e]xcept as provided in subsection (a) of this section, the court shall close the case when administration of the case has been completed." 11 U.S.C. § 945(b).  The Code does not define when "administration of [a Chapter 9] case has been completed."

When a statutory term is not defined by Congress, rules of statutory construction dictate that the term be given its ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.A. 560, 566, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012. In a Chapter 9 case pending in the Western District of Missouri, the court relied on Black's Law Dictionary in defining "administration" to mean "judicial action in which a court undertakes the management and distribution of property." *In re Lake Lotawana Cmty. Improvement Dist.*, 2017 Bankr. LEXIS 1290 *5, 77 Collier Bankr. Cas. 2d (MB) 1303, 64 Bankr. Ct. Dec. 40 (W.D. Mo. 2017).

In *In re Lake Lotawana*, the court considered a debtor's motion to close its earlier Chapter 9 case after it defaulted on the final payment due under its confirmed plan and filed a second Chapter 9 case. *Id.* at *1-2. Citing the definition of "administration," the court concluded that the administration of the first case was complete because there were no questions regarding construction of the confirmation order or the plan and, with the exception of the debtor's motion to close the case, there were no pending matters in the first case. *Id.* at *7.

A different court reached the opposite conclusion on very different facts in *In re Grady Rd. & Bridge Dist.*, 119 B.R. 844, 1990 Bankr. LEXIS 2096 (Bankr. M.D. Fla. 1990). The debtor's confirmed Chapter 9 plan incorporated a contract requiring a creditor to furnish all funds necessary to consummate the plan and to obtain a maintenance bond for a dam on the debtor's property. 119 B.R. at 845. In exchange, the debtor would convey its assets to the creditor free and clear of all liens, encumbrances, and claims or interests of creditors. *Id.* The plan specifically reserved to the court jurisdiction to "hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan." *Id.* at 846.

When the *Grady* court directed the debtor to file all papers necessary to close the case, the debtor advised the court of a dispute with the creditor over the maintenance bond. *Id.* The debtor

nevertheless filed a motion to close the case, citing its "substantially consummated plan."  The court disagreed with the debtor's characterization of its plan, finding that because the contract between the debtor and the creditor was the "very essence and underlying basis for the Debtor's confirmed Plan, . . . the administration of this case has not been completed."  *Id.* at 847.  Suffolk OTB's case is easily distinguishable from the *Grady* case.

Though not directly applicable, the standard used in determining whether a Chapter 11 case is "fully administered" under section 350(a) of the Bankruptcy Code and implemented by Bankruptcy Rule 3022 may prove instructive regarding whether administration of Suffolk OTB's case is complete.  The 1991 Advisory Committee Note to Bankruptcy Rule 3022 supplies a non-exhaustive list of factors to be considered in determining whether a Chapter 11 case has been "fully administered:" (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been distributed; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor or the successor to the debtor under the plan has assumed the business or the management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters and adversary proceedings have been finally resolved.

Suffolk OTB has nearly and—very successfully—completed its Confirmed Plan.  As was the case *In re Lake Lotawana,* there is little that remains to be done.  Similarly, the factors identified by the Advisory Committee in connection with Bankruptcy Rule 3022 weigh in favor of closing this Chapter 9 case.

The Court entered its *Findings of Facts, Conclusion of law, and Order Confirming Second Amended Plan for the Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation* [Dckt. No.326] (the "Confirmation Order") on October 31, 2014, more than five years ago.  Since

the opening of the VLT Facility in 2017 in Islandia, New York, Suffolk OTB has remained current on all of its obligations, but also has greatly reduced its pre-Chapter 9 case obligations. *Decl. of Celine M. Gazes in Support of Motion to Close Case* dated June 23, 2020, ¶ 4 [Dckt. No. 858]. Suffolk OTB's pre-Chapter 9 case debt to New York Community Bank of over $5 million has been paid in full. *Id.* Suffolk OTB's pre-Chapter 9 case debt to Suffolk County of approximately $600,000 has been paid in full. *Id.* Since 2017, Suffolk OTB has paid a total of approximately $7.8 million to Suffolk County, and has paid more than $10 million to its Allowed Class 4 creditors under the Confirmed Plan. *Id.* The claims of the Class 4 general unsecured creditors have been reduced from over $18 million in booked and asserted claims to approximately $4.6 million as of this date. There are no other remaining pre-petition claims against Suffolk OTB. *Id.* at ¶5. With the conclusion of the Delaware North adversary proceeding, only those matters specifically identified in the Motion remain open. None of the matters identified in the Motion is a bar to closing this case.

## THE COURT MAY STILL CONSIDER FUTURE ISSUES

Suffolk OTB submits that no major issues remain to be addressed by this Court. To the extent issues might arise after the closing of the case, the Second Circuit has stated, "the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." *In re Porges*, 44 F.3d 159, 162 (2d. Cir. 1995). If the court grants Suffolk OTB's Motion, "[t]he decision whether to retain jurisdiction [is] left to the sound discretion of the bankruptcy court . . . ." *In re Porges*, 44 F.3d 159, 162 (2d. Cir. 1995). The Second Circuit reiterated this rule in *Millenium Seacarriers*, adding that "the court is only deprived of subject

matter jurisdiction over the ongoing action if the decision to retain jurisdiction constitutes an abuse of discretion." *In re: Millenium Seacarriers, Inc.*, 458 F.3d 92, 96 (2d. Cir. 2006).

Furthermore, the Second Circuit and other bankruptcy courts in this district have consistently held that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders.  *See Luan Inv. S.E. v. Franklin Corp.* (*In re Petrie Retail, Inc.*), 304 F.3d 223, 230 (2d. Cir.2002) ("*Petrie Retail*") ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."); *In re Charter Communications*, No. 09–11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb.8, 2010) ("Charter Communications ") (Peck, J.), appeal docketed, No. 1:10–CV–02930 (GBD) (S.D.N.Y. Apr. 4, 2010) (declaring that the bankruptcy court "unquestionably has the authority and discretion to rule on the Enforcement Motion and consider whether the causes of action [brought in another court] have been released and should be enjoined" where bankruptcy court "retained exclusive jurisdiction to interpret injunction that is part of its own order confirming the Plan"); *In re Texaco, Inc*., No. 87–20142, Hr'g Tr., May, 28, 2010, at 2 (Bankr. S.D.N.Y.2010) (Drain, J.) (determining that the bankruptcy court had jurisdiction to enforce a confirmation order it had entered 22 years earlier).

As Judge Peck explained in *Charter Communications*:

> All courts retain jurisdiction to interpret and enforce their own orders. This proposition recently was confirmed by the United States Supreme Court in *Travelers Indem. Co. v. Bailey*, which found a 'Bankruptcy Court plainly had jurisdiction to interpret and enforce' a confirmation order it had entered twenty years earlier.

2010 WL 502764 at *4 (*citing Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195, 2205, 174 L.Ed.2d 99 (2009)).

In this case, the Court has entered several critical orders over which it will retain jurisdiction, including but not limited to the Confirmation Order, [Dckt No. 326]; Town of Brookhaven Order [Docket No. 476]; and the Tomasino Order [Adv. Pro. Dckt No. 100].  Under the express terms of the Confirmed Plan, "the Court retains exclusive jurisdiction to the fullest extent permitted by applicable law of all matters arising under, arising out of, arising in or related to the Chapter 9 case and the Plan" including but not limited to "tak[ing] an action and issu[ing] such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan . . . [or] for the maintenance of the integrity of the Plan and protection of the Debtor in accordance with section 524 of the Bankruptcy Code following consummation[.]" *See Confirmed Plan,* Art. XIII(A)(12).  Similarly, in accordance with the Second Circuit's decisions in *Porges* and *Millenium Seacarriers*, the proposed order closing this case expressly provides that the Court "retains jurisdiction to enforce any and all orders and judgments entered in the Chapter 9 case and any related adversary proceedings."  [Dckt. No. 862].

Administration of this case has been completed and the Court can order the case closed under Section 945 of the Bankruptcy Code.  Not only is it appropriate to do so, but it is critical that a final order be entered immediately to free Suffolk OTB to close on the PPP loan and grant and the exit financing that has been reserved for it.  Further, any stay that might otherwise be required under Bankruptcy Rules 6004(h) and 7062 should be dispensed with to allow Suffolk OTB to receive the exit financing that will permit it to pay the balance due its Class 4 creditors. Any remaining issues are *de minimus* and can be dealt with after the case is closed as provided in 11 U.S.C. § 945(a) and *In re Porges.*

## **CONCLUSION**

This case exemplifies the real world impact of the United States Bankruptcy Code and—in particular— Chapter 9 and the potency of the Bankruptcy Court to solve intractable problems. Suffolk OTB has gone from deep insolvency and negative cash flow to a valuable public benefit corporation with tens of millions of dollars in assets and positive cash flow. Not only have all creditors been satisfied—or shortly will be— hundreds of jobs were preserved and hundreds more created in Suffolk County.  Pensions and benefits that were threatened have been preserved for current and future retirees.  Moreover, pursuant to the Confirmed Plan, Suffolk County has been paid nearly $8 million to date and New York State has collected over $200 million from the VLT operations for the New York State Education Department and General Administration.  None of these consequential events would have transpired without the Bankruptcy Code and this Court.

For the reasons set forth herein and in the accompanying papers on this Motion, Suffolk OTB respectfully requests that the Court grant the *Motion of the Adjusted Debtor Suffolk Regional Off-Track Betting Corporation to Close Chapter 9 Case* and close this case.

Dated:  White Plains, New York
　　　　June 29, 2020

ECKERT SEAMANS CHERIN & MELLOTT, LLC,

By:　 /s/ Christopher F. Graham　　　　　
　　　Christopher F. Graham, Esq.
　　　Kelly Robreno Koster, Esq.
　　　Ren-Ann A. Wang, Esq.
　　　Annemarie DiNardo Cleary, Esq.*
　　　10 Bank Street, Suite 700
　　　White Plains, NY 10606
　　　Telephone #: (914) 949-2909
　　　Facsimile #: (914) 949-5424

　　　*Counsel for Adjusted Debtor*
　　　*Suffolk Regional Off-Track Betting Corporation*

* Not admitted in New York.